UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE DUARTE, | ) Case No.: 1:14-cv-01732-BAM |
| Plaintiff, | ) |
| | ) **ORDER REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **INTRODUCTION**

Plaintiff Diane Duarte ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

1

**FACTS AND PRIOR PROCEEDINGS**

On March 7, 2011, Plaintiff filed an application for disability insurance benefits. AR 121-122.[1] Plaintiff alleged that she became disabled on February 17, 2009, due to a hysterectomy, the removal of her left kidney, vision problems, numbness in the arms and legs, and back pain. AR 68, 130-140. Plaintiff's application was denied initially and on reconsideration. AR 67-70, 73-77. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Christopher Larsen held a hearing on November 28, 2012, and issued an order denying benefits on January 4, 2013. AR 18-29. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 12-14, 17. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on November 28, 2012, in Fresno, California. AR 36-59. Plaintiff appeared and testified. She was not represented by counsel. AR 36. Impartial Vocational Expert ("VE") Judith Najarian also testified. AR 52.

At the outset of the hearing, Plaintiff confirmed that she had been released from the hospital the previous day, but was able to proceed. AR 36. The ALJ then explained the procedure for the hearing and discussed whether Plaintiff wanted to postpone the hearing to find representation. Plaintiff elected to proceed with the hearing. AR 36-38.

In response to questioning by the ALJ, Plaintiff testified that she was 54 years old, had graduated from high school and had attended community college, where she received a certificate related to computers. AR 40-41.

Plaintiff reported that she worked for the IRS as a mail extractor on a temporary, seasonal basis. She also worked as a dry food inspector as a quality controller, which was her only full-time job. She did not have any other full-time work in the last 15 years. AR 41-42.

In response to questions about her hospital stay, Plaintiff testified that she was there because her thyroid and calcium were low and she had shortness of breath, along with high blood pressure.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

She was in the hospital for five days and they treated her with IVs. Plaintiff reported that she had not been taking her medications before she went into the hospital because of financial difficulties. AR 42-44.

In addition to her left kidney removal, hysterectomy and high blood pressure, Plaintiff testified that other medical issues affect her ability to work, including back pains following removal of her kidney. However, no doctor has told her what is causing the back pain. She cannot be on her feet too long because it hurts. Plaintiff indicated that she could stand or walk 10-15 minutes. Sitting is not painful. She could carry a bag of groceries and one, or maybe two, bags of potatoes. AR 45-49. Plaintiff does not do any yard work, but will do laundry and sweep. She has a driver's license and will drive. AR 50-51. Plaintiff reported that she had not really been to see a doctor because of insurance and no MediCal. AR 49.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Judith Najarian. AR 52. The VE testified that Plaintiff's past work was classified as inspector grader-agricultural establishment, quality control technician, and sorter. AR 54-55.

The ALJ then asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and work experience. AR 55. In his first hypothetical, the ALJ asked the VE to assume an individual who could perform medium physical exertion, but could only occasionally climb ladders, ropes or scaffolds, could frequently balance, stoop, kneel, crouch, crawl and climb ramps or stairs, but could not perform work requiring good depth perception and must avoid concentrated exposure to hazards. The VE testified that this worker could perform Plaintiff's past work as a sorter. This worker also could perform other jobs in the economy, such as counter supply worker, linen room attendant, and transporter patient. AR 55-56.

For the next hypothetical, the ALJ asked the VE to consider the same worker with all the same limitations except reduced to light physical exertion. The VE testified that this worker could still be a sorter. This person also could perform other jobs, such as mail clerk, marker and ticket taker. AR 57-58.

For the next hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience. The worker could lift 10 pounds occasionally, less than 10 pounds

frequently, could stand and walk a total of about two hours in an eight-hour day and could sit a total of only two to three hours in an eight-hour day. The VE testified that such a worker could not perform Plaintiff's past relevant work or any work. AR 58.

**Medical Record**

The entire medical record was reviewed by the Court. AR 190-519. The relevant medical evidence, summarized here, will be referenced below as necessary to this Court's decision.

On January 23, 2009, Plaintiff sought emergency room treatment at Community Regional Medical Center for complaints of vaginal bleeding for 3-4 days. Plaintiff reported a longstanding history of vaginal bleeding and was being treated in Mexico with unknown medications. She was admitted for observation and administration of IV estrogen. AR 250-51.

On January 28, 2009, Plaintiff sought treatment for complaints of weakness, nausea, vomiting, shortness of breath and abdominal pain. Plaintiff had a history of hypertension and hypothyroidism, but had not been taking Synthroid for the past 7 weeks. Plaintiff was assessed with a urinary tract infection, hypothyroidism, acute renal failure, anemia, fibroid uterus and obesity. She was admitted for treatment. AR 257-259.

On January 28, 2009, Plaintiff presented to the emergency room at Community Regional Medical Center for vaginal bleeding. She reportedly was in Mexico for a vacation and was found to have a large uterine fibroids. Following a review of a CT scan with ultrasound films, Plaintiff had a very large left renal mass with acute prematurity of the kidney. She also had a very large uterine fibroid in the lower pelvis. A laparoscopic left radical nephrectomy was recommended before proceeding with a hysterectomy. AR 260-62.

On January 31, 2009, Plaintiff underwent medical imaging of her abdomen pelvis with contrast. With contrast, the imaging showed a large heterogeneous left renal mass suspicious for a malignant neoplasm. She had an enlarged uterus with multiple lesions. AR 291. Without contrast, the imaging showed fibroid uterus and left renal mass suspicious for renal cell carcinoma. AR 292.

On February 11, 2009, Plaintiff sought emergency room treatment at Community Regional Medical Center for pain in the lower abdomen with profuse vaginal bleeding. Plaintiff was admitted with a diagnosis of anemia secondary to vaginal bleeding. The OB/GYN recommended a

hysterectomy scheduled for February 17, 2009. Plaintiff also was found to be hypocalcemic. She was started on vitamin D and a calcium supplement. Plaintiff was discharged on February 15, 2009. AR 236-237, 254-56.

On February 17, 2009, Plaintiff was admitted to Community Regional Medical Center for a total abdominal hysterectomy and bilateral salpingo-oophorectomy. Following surgery, she was to have pelvic rest for 6 weeks. AR 232-33, 248-49, 265-66.

A chest x-ray completed on March 24, 2009, showed normal cardiac size, clear lungs, and minimal degenerative changes of the thoracic spine. AR 191.

On February 27, 2009, Plaintiff met with Dr. Soe Naing at the UCSF-Fresno endocrine clinic. Plaintiff had diagnoses of hypoparathyroidism, hypothyroidism, fibroid, status post hysterectomy in February 2009, left renal mass due for left nephrectomy and hypertension. Plaintiff reported feeling well without any muscle cramps, spasm or pins and needle sensation in her hands or feet. Plaintiff was to continue with her medications. AR 452-453.

On March 31, 2009, Plaintiff underwent laparoscopic radial nephrectomy for a mass on her left kidney. AR 197-226.

On March 19, 2009, Plaintiff saw Dr. Naing in the endocrine clinic. She was to continue on her medications. AR 450. On March 22, 2009, Dr. Naing instructed Plaintiff to hold calcitriol and calcium supplements for two days before restarting. AR 451.

On April 21, 2009, Plaintiff saw Dr. Naing in the endocrine clinic. Plaintiff was to continue with her prescribed medications. AR 449.

On September 17, 2009, Plaintiff was noted to be on a stable dose of calcitriol and calcium carbonate. AR 301.

On October 1, 2009, Plaintiff saw Dr. Naing for a follow-up visit in the endocrine clinic. Dr. Naing noted that Plaintiff was on a stable does of calcitriol and calcium carbonate. Plaintiff remained "very well." Dr. Naing recommended that Plaintiff remain on her current doses of calcitriol and calcium supplement. Plaintiff told Dr. Naing that she may lose her health insurance at the end of the month and she had been trying to apply to Medi-Cal. AR 448.

On April 15, 2010, Plaintiff saw Dr. Naing in the endocrine clinic. Plaintiff reported that she had not been able to refill her calcitriol and levothyroxine for the past couple of months after losing her health insurance. Plaintiff reported getting her health insurance for a month and began taking her medications. Although Plaintiff previously had been advised to go to the ER for intravenous calcium, she did not go. AR 300.

On April 19, 2010, Plaintiff was sent to the emergency room by her endocrinologist for hypocalcemia treatment. Plaintiff complained of cramping in her legs and stomach. AR 244.

On August 27, 2010, Plaintiff returned to the UCSF clinic and reported that she was able to get health insurance coverage. Plaintiff had begun taking thyroid hormone, calcitriol and calcium supplements. Dr. Naing gave her a three monthly refill for calcitriol and a one-year refill for levothyroxine, which she would purchase through the $4 plan at Walmart. AR 299.

On June 13, 2011, Dr. Tomas Rios completed a consultative internal medicine evaluation. Plaintiff's chief complaint was chronic pain in her back. AR 336. On physical examination, Plaintiff ambulated smoothly and rhythmically without any gait alteration. Plaintiff was 5'3" and weighed 305 pounds. She was capable of getting on and off the examination table unassisted. Her coordination, station and gait were normal. Straight leg raising was accomplished to 80 degrees both from a seated and supine position bilaterally without any report of pain originating from the lower back. Palpation of lower back revealed no spasms and provocative maneuvers elicited no findings suggestive of nerve root impingement. However, Plaintiff reported some tenderness along the mid and lower lumbar spine. She had no atrophies to the lower extremities and her mobility did not appear to be restricted. Her motor strength was 5/5 throughout with normal muscle bulk and tone. Her vision, on the Snellen's test without lenses, showed left 20/200 and right 20/20. Dr. Rios diagnosed Plaintiff with status post left nephrectomy, mechanical back pain, status post hysterectomy and history of hypothyroidism, clinically euthyroid. Dr. Rios opined that Plaintiff could stand and walk up to six hours, sit up to six hours, lift and carry 50 pounds occasionally and 25 pounds frequently. She could frequently climb, balance, stoop, kneel, crouch and crawl. AR 336-339.

On July 19, 2011, Dr. Kenneth Wainner, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment. Dr. Wainner opined that Plaintiff could lift and/or

carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. She did not have any postural, manipulative, visual, communicative or environmental limitations. AR 346-353.

On November 22, 2011, Plaintiff was admitted to the hospital due to severe hypocalcemia and hypothyroidism. She was to have an endocrinology consult. AR 409-10.

On December 20, 2011, Plaintiff met with Dr. Naing in the endocrine clinic. Plaintiff had not been taking any of her medication as she lost her health insurance coverage again. Plaintiff had been experiencing severe tiredness, generalized aches and pains, severe sleepiness and muscle cramps. Dr. Naing diagnosed severe hypothyroidism and severe hypocalcemia. Plaintiff was to be transferred to the emergency room. AR 443-44.

On December 20, 2011, Plaintiff received emergency room treatment following referral by Dr. Naing, who wanted Plaintiff admitted to follow her calcium and thyroid levels. AR 424-27. On examination, Plaintiff reported that her symptoms occurred in context of known hypoparathyroidism and hypothyroidism and being out of meds. It was noted that medical attention had been previously sought for the same problem when Plaintiff presented with severe hypothyroidism and hypocalcemia related to medical non-compliance. Plaintiff also complained of back pain on the left flank since her left nephrectomy in March 2009. She rated it up to 9/10 in severity and worse with movements. Plaintiff was unable to describe the quality of pain and denied radiation. Plaintiff was admitted for treatment and the physician discussed with Plaintiff the importance of lifelong compliance with the medication regimen. AR 417-24.

On December 21, 2011, Dr. Naing noted that Plaintiff had presented to the emergency department with muscle cramps, back pain and weakness. Plaintiff reportedly was out of all medications for months. Dr. Naing diagnosed severe hypocalcemia and hypothyroidism. AR 410-415.

On December 27, 2011, Plaintiff saw Dr. Naing in the endocrine clinic. Plaintiff reported that she was unable to get calcitriol from her pharmacy and had not been taking it following her hospital discharge. Dr. Naing gave Plaintiff prescriptions for levothyroxine, calcitriol and Cozaar. AR 441-42.

On January 18, 2012, Dr. D. Mai, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form. Dr. Mai opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, and could sit about 6-hours in an 8-hour workday. She frequently could climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but only occasionally could she climb ladders, ropes and scaffolds. She had no manipulative or communicative limitations, but had visual limitations with depth perception and field of vision. She also must avoid concentrated exposure to hazards (machinery, heights, etc.). AR 477-484.

On April 16, 2013, Plaintiff was referred to the emergency room for abnormal calcium levels. A physical examination revealed no joint tenderness, deformity or swelling and no muscular tenderness. She was diagnosed with hypocalcemia, hypothyroid and hypoparathyroid. AR 507-09. Dr. Chantal Fletcher completed a general internal medicine evaluation. As Plaintiff did not know the medications she was supposed to be taking, Dr. Fletcher called Plaintiff's Walmart pharmacy and obtained a list of medications, which included the following: (1) levothyroxine, which Plaintiff had been picking up and taking since March; (2) hydralazine, which was on hold and had not been picked up for months; (3) oyster calcium, which was on hold and had not been picked up; (4) Pepcid, also not picked up; and (5) calcitriol, but no active prescription. Plaintiff complained of cramping in her bilateral lower extremities, which was sometimes better when she walked. Plaintiff also complained of low back pain, worsening when she did housework or walked. Plaintiff reported difficulty getting up and feeling weak related to her back pain. Dr. Fletcher diagnosed Plaintiff with hypocalcemia, hypothyroidism and very poorly controlled hypotension. Although Dr. Fletcher diagnosed low back pain and difficulty ambulating, Plaintiff's motor examination was "fairly unimpressive." Dr. Fletcher planned to get low back films. With regard to medication compliance, Dr. Fletcher talked to the pharmacist at Walmart, who said Plaintiff converted to cash pay and no longer had a Medi-Cal card showing up there. However, Dr. Fletcher stated, "I truly do not understand all the issues with this patient as she says she has Medi-Cal so I am not sure why she is not getting her medications." Plaintiff was to be admitted. AR 510-15.

On April 19, 2013, upon discharge, Dr. Abhishek Tandon reported that Plaintiff's low back films were unremarkable and PT had cleared her for ambulation.  Further, with regard to medication noncompliance, Dr. Tandon noted that a nurse had confirmed that Plaintiff had insurance - medical blue cross.  Dr. Tandon indicated that Plaintiff should be able to get medications at home.  AR 516-19.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 21-29.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity during the period from her alleged onset date of February 17, 2009, through her date last insured of December 31, 2010.  AR 23.  Further, the ALJ identified obesity, status post hysterectomy, status post left nephrectomy and hypothyroidism as severe impairments.  AR 23.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 23-24.  Based on his review of the entire record, the ALJ determined that, through the date last insured, Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours cumulatively and sit 6 hours total in an 8-hour workday.  She also could climb ladders, ropes and scaffolds occasionally and frequently balance, stoop, kneel, crouch, crawl and climb ramps or stairs.  She could not perform work requiring good depth perception and needed to avoid concentrated exposure to hazards.  AR 24-27.  The ALJ found that Plaintiff could not perform her past relevant work through the date last insured, but could have performed other jobs existing in the national economy.  AR 27-28.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act at any time from February 17, 2009, the alleged onset date, through December 31, 2010, the date last insured.  AR 28-29.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[2]

Plaintiff's only argument is that the ALJ failed to provide clear and convincing reasons for rejecting her credibility. The Commissioner counters that substantial evidence supports the ALJ's credibility evaluation. The Court finds that the ALJ properly assessed Plaintiff's credibility.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce her alleged symptoms." AR 27. At the second step, however, the ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not entirely credible. AR 27. In so doing, the ALJ provided several clear and convincing reasons for finding Plaintiff not fully credible. AR 27.

First, the ALJ properly considered that Plaintiff's allegations of back pain since the removal of her kidney in 2009 were unsupported by the medical record. AR 27. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Batson*, 359 F.3d at 1196-97 (ALJ properly relied on objective medical evidence and medical opinions in determining credibility). In this instance, the ALJ acknowledged Plaintiff's testimony that no treating physician had diagnosed back pain and there was an absence of any diagnostic images in the record. AR 27, 48-49.

Plaintiff contends that the ALJ's reasoning failed to account for her inability to seek treatment due to a lack of insurance. (Doc. 15 at 8). However, the record reflects that when Plaintiff

11

complained of back pain in 2013, x-rays were unremarkable, motor examination was fairly unimpressive and she was cleared for ambulation. AR 510-19.

Moreover, the ALJ relied on the findings of the consultative examiner, Dr. Rios, who found no spasms of the lumbar spine and no nerve root impingement. He also found that Plaintiff had normal gait, normal range of motion and negative straight leg raising. Dr. Rios did not document any functional deficits related to back pain. AR 27, 337-39. Therefore, the ALJ reasonably concluded that Plaintiff's complaints of disabling back pain were not fully credible. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (ALJ reasonably found complaints of disabling knee pain not credible in light of lab tests showing knee function within normal limits).

Second, the ALJ discounted Plaintiff's credibility because she participated in activities inconsistent with total disability. AR 27. An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"); *Mulligan v. Colvin*, No. 1:14-cv-1023-BAM, 2015 WL 5687661, at * 5 (E.D. Cal. Sept. 25, 2015) (discounting credibility where plaintiff maintained his own personal hygiene, prepared meals, performed light household chores and yard work once or twice a week, and shopped a couple times a month). Here, the ALJ found that Plaintiff participated in daily activities inconsistent with the allegations of total disability. These activities were based on Plaintiff's testimony that she does laundry, washes dishes, cleans the house, sweeps and drives. AR 27, 48, 50-51.

Plaintiff suggests that the ALJ improperly considered her "minimal activities" as evidence of untruthfulness because they do not demonstrate that she can work on a sustained basis. (Doc. 15 at 8). However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

As a final matter, the ALJ also discounted Plaintiff's credibility because of her non-compliance with medications. The ALJ found that despite evidence that medications were effective in controlling Plaintiff's symptoms, her non-compliance with medication management was an ongoing problem and

she was only hospitalized during periods of non-compliance. AR 27. An unexplained, or inadequately explained, failure to follow a prescribed course of treatment may cast doubt on the sincerity of the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a plaintiff's subjective complaints lack credibility. *Id.; see also Bunnell*, 947 F.2d 341, 346 (9th Cir. 1991).

Plaintiff counters that the ALJ erred by failing to consider that her non-compliance with medications was due to her financial circumstances. (Doc. 15 at 9). The Court agrees. As a general rule, the Commissioner cannot deny benefits to someone because she is too poor to obtain medical treatment that may help her." *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir.1995) (citation omitted). Here, Plaintiff testified that financial difficulties prevented her from getting medications. AR 44-45. Although the medical records demonstrate that on occasion Plaintiff was not compliant with her physician's advice to attend the ER for treatment [AR 299-300, 445] or was not compliant with her medications because she did not know what medications to take [AR 511], the majority of the records indicate that Plaintiff was non-compliant with her medications due to a lack of insurance [AR 300, 443-44, 417-24]. Therefore, Plaintiff's non-compliance with medication management is not a clear and convincing reason for discrediting her testimony. Although this reason may have been in error, the ALJ's credibility determination will not be disturbed because there is substantial evidence to support the ALJ's other conclusions. *See, e.g., Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error). Moreover, it was not error to suggest that Plaintiff's symptoms could be controlled by medications because her emergency room treatment coincided with her non-compliance with medications. AR 27, 44, 443-44, 417-24, 410-15, 510-15.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

///

///

///

Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Diane Duarte.

IT IS SO ORDERED.

Dated:   **March 9, 2016**                          /s/ *Barbara A. McAuliffe*
                                                                    UNITED STATES MAGISTRATE JUDGE